IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SAMANTHA KAY MORAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00496-O-BP |
| | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Samantha Kay Moran ("Moran") applied for Title XVI Supplement Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that she was not disabled. Moran exhausted her administrative appeals, and filed an appeal in this Court. The case was automatically referred to the undersigned pursuant to Special Order 3. At issue is whether substantial evidence supports the decision of the Administrative Law Judge ("ALJ") that Moran is generally capable of performing light work and whether the ALJ applied the correct legal standard in reaching his conclusion. Finding that substantial evidence supports the decision and that the ALJ applied the correct legal standard, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's denial of Moran's application and **DISMISS** the case.

**I.     BACKGROUND**

Moran first applied for SSI on March 30, 2021, alleging disability due to the combined effects of major depressive disorder, obesity, post-traumatic stress disorder ("PTSD"), general anxiety disorder/agoraphobia, night terrors, back and neck injuries with bulging disc, high blood pressure, type II diabetes, neuropathy in her hands and feet, and a Global Assessment of

Functioning Score ("GAF") of 45. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 10 at 215-24, 216, 253. The Commissioner denied her application initially and upon reconsideration. *Id.* at 100, 118. Moran challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision. *Id.* at 50, 17.

Moran appealed the decision to the Social Security Appeals Council ("AC"), which denied review. Tr. 1-3. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Thereafter, Moran filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.     STANDARD OF REVIEW

Title XVI of the SSA governs the SSI program. *See* 42 U.S.C. §§ 1381-1383f. Claimants seeking benefits under the program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating that the "relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for [SSI]"). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing

significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 23-31. First, the ALJ found that Moran had not engaged in substantial gainful activity since March 30, 2021. *Id*. at 28. Second, he found nine medically severe impairments: major depressive disorder, agoraphobia, anxiety disorder, PTSD, hypertension, diabetes, obesity, degenerative disc disease of the cervical spine with radiculopathy, and degenerative disc disease of the lumbar spine with radiculopathy. *Id*. at 22. The ALJ also found non-severe medical impairments, including high cholesterol, asthma, migraines, a tendon strain in December 2021, low renal function in early 2021, and a urinary tract infection in April 2022. *Id*. at 22-23. Third, he identified no impairment or combination of impairments that qualified under the federal regulatory list. Tr. 23.

The ALJ then assessed Moran's RFC:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b), except as follows. She is limited to performing simple, routine, repetitive tasks and to making simple work-related decisions. She can have only occasional contact with supervisors and coworkers, and no contact with the public. She can tolerate only occasional changes in the work setting.

Tr. 25. Fourth, using this RFC, the ALJ determined that Moran could not perform PRW. *Id.* at 31. Relying on testimony from a vocational expert ("VE"), the ALJ concluded at step five that Moran's age, education, work experience, and RFC with additional limitations still allowed her to perform the requirements of another job. *Id.* at 31. The step-five finding meant that Moran was ineligible for SSI because she was not disabled. *Id.* at 32; *see Lovelace*, 813 F.2d at 58. The ALJ then found Moran "not disabled" under 20 C.F.R. 416.920(g). Tr. 32.

Moran argues four grounds for reversal, all of which pertain to her RFC. ECF No. 15. Determining a claimant's RFC is the ALJ's responsibility. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). Even if the ALJ errs, reversal is only proper if prejudice results. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here, the ALJ's decision proceeded through the five-step evaluation process. Tr. 22-32. The ALJ determined Moran's RFC after step three. *Id.* at 25. The ALJ "considered all symptoms . . . [,] medical opinion(s)[,] and prior administrative medical finding(s)[.]" *Id.* But Moran contends that the ALJ erred by failing to (1) fully incorporate state agency psychological consultant Dr. Martin Koretzky's opinion; (2) consider the effects of Moran's left shoulder impairment; (3) properly evaluate Moran's subjective testimony; and (4) provide legitimate reasons for rejecting Dr. Martin Richards's medical opinion. ECF No. 15.

5

### A.    The ALJ properly incorporated Dr. Koretzky's opinion into the RFC.

The ALJ found Dr. Koretzky's opinion to be "generally persuasive." Tr. 29. Moran contends that considering this finding, "the ALJ erred by not fully incorporating Dr. Koretzky's opinion as part of the RFC[] or by [not] explaining why he was rejecting a portion of Dr. Koretzky's opinion." ECF No. 15 at 19.

Dr. Koretzky opined in relevant part that Moran was capable of maintaining "with some difficulty" both "attention and concentration for periods of 2 hours or more" and "attendance." Tr. 86-87. The RFC lacks any limitations pertaining to Moran's attendance, attention, or concentration, and the ALJ does not explicitly indicate that he rejected opinions. Tr. 25, 29. Moran thus argues that the ALJ implicitly rejected this portion of Dr. Koretzky's opinion without articulating reasons why, frustrating court review. ECF No. 15 at 21 (citing 82 Fed. Reg. 5858 (Jan. 18, 2017)). *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.").

An ALJ has broad discretion to resolve conflicts in the evidence without the Court second-guessing him. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). "The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion." *Jackson v. Colvin*, 240 F. Supp. 3d 593, 602 (E.D. Tex. 2017) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). "Indeed, if 'perfect matching' was required, the ALJ's RFC determination would be largely limited to rubberstamping a particular medical opinion, not making a determination based upon all of the relevant evidence in the case record." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 498 (S.D. Miss. 2021) *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-

RPM, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021), *rec. adopted*, No. 1:20-CV-00166-HSO-RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021).

The ALJ limited Moran to "performing simple, routine, repetitive tasks and to making simple work-related decisions." Tr. 25. He also limited her to "only occasional contact with supervisors and coworkers, and no contact with the public." *Id.* This tracks Dr. Koretzky's opinions. The ALJ need not "incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion." *Jackson*, 240 F. Supp. 3d at 602. Accordingly, substantial evidence supports the ALJ's RFC.

Moreover, the ALJ addressed record evidence of Moran's attendance, concentration, and attention that did not support Dr. Koretzky's opinions. The ALJ found that Moran "consistently has exhibited intact memory, attention, concentration, insight, and judgment." Tr. 29 (citing *id.* at 659, 705, 712, 722, 1032, 1045, 1068-69); *see also* Tr. 27 (citing Tr. 579, 591, 670, 711, 729-30, 738, 750, 1032, 1068-69) (finding that Moran's concentration is intact). The ALJ also addressed Moran's increased anxiety when leaving her home, and found that "[n]evertheless, she expresses herself well and interacts appropriately in mental health and medical encounters." Tr. 29 (emphasis added) (citing Tr. 703-706, 737, 745, 1028, 1065, 729-30, 659, 712, 722, 1032, 1045, 1074-75).

Thus, to the extent that the ALJ's RFC constitutes an implicit rejection of part of Dr. Koretzky's opinion, the Court finds that his discussion nonetheless "buil[t] an accurate and logical bridge between the evidence and the final determination" and "allow[s] a subsequent reviewer or reviewing court to trace the path of [his] reasoning." *Price*, 401 F. App'x at 986; 82 Fed. Reg. 5858 (Jan. 18, 2017). Reversal is therefore improper as to this issue.

### B.     The ALJ properly considered Moran's left shoulder impairment.

Moran also argues that "the ALJ failed to properly evaluate the functional limitations arising out of [her] left shoulder impairment." ECF No. 15 at 21. The ALJ is to assess the claimant's RFC "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). Objective medical evidence includes observable medical signs and laboratory findings. *Id.* § 416.902(k)-(l). An ALJ must "consider the limiting effect of all" the claimant's impairments, "even those that are not severe," in determining the RFC. *Id.* § 416.945(e).

Generally, for an ALJ to consider an impairment, it "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 416.909. If a claimant is "doing substantial gainful activity," then she is not disabled "regardless of [her] medical condition[.]" 20 C.F.R. § 404.1520(b). "[T]he Agency has interpreted this regulation to mean that the claimant is not disabled if 'within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful activity." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (quoting 65 Fed. Reg. 42774 (2000)). Thus, both an impairment and an inability to work must have lasted or be expected to last for twelve months. *Id.* The claimant bears the burden of proving her disability lasted the twelve-month period. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

Moran focuses on proving the existence of the impairment for twelve months, not on its impact on her ability to engage in substantial gainful activity. ECF No. 15 at 22. On January 11, 2021, Moran reported a flare up of her shoulder bursitis to chiropractor Stephen Young, D.C. Tr. 369. On July 6, 2021, she reported pain in her left shoulder and neck. Tr. 666. On August 5, 2021, she had a physical therapy evaluation that showed that she had left shoulder strength at 3-/5 with flexion of 100 degrees. Tr. 790. On December 26, 2021, she went to the emergency room with numbness in her left shoulder. Tr. 710-12. On July 7, 2022, her review of systems included left

upper extremity weakness at baseline status (after a 2009 car accident) and bilateral upper extremity intermittent numbness/tingling occurring two to three times a day. Tr. 1050, 1054.

Moran contends that the ALJ did not properly consider the evidence of her left shoulder impairment. ECF No. 15 at 22. But in determining Moran's RCF, the ALJ stated that he "considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 25. He "also considered the medical opinion(s) and prior administrative medical finding(s)[.]" *Id.* He concluded that "the record in this case does not establish that the claimant[] has debilitating limitations that preclude all work." Tr. 26.

Specifically, the ALJ found that the record showed that Moran has "demonstrated good strength, *range of motion*, sensation, reflexes, and coordination." Tr. 27 (citing Tr. 664, 674-75, 712, 1042, 1051, 1110) (emphasis added); *see also id.* at 29 ("Dr. Rowley's opinion that the claimant can perform the exertional requirements of light work is persuasive. It is consistent with physical findings of good strength, mobility, and motor function.") (citing Tr. 659, 664, 670, 712, 1042, 1044-45, 1059, 1110). The ALJ also considered medical opinions from state agency medical consultants Cynthia Linardos and Patty Rowley. Tr. 28. Dr. Rowley opined that Moran had a severe musculoskeletal impairment which limited her ability to lift and carry weight, including a limitation to only occasionally lifting overhead with her left arm. *Id.* (citing Tr. 84-86). But the ALJ found this unpersuasive because Dr. Rowley attributed Moran's shoulder pain to the differential diagnosis of "nerve root impingement," while the final diagnosis was a strained tendon. *Id.* (comparing Tr. 85, 712 with Tr. 715). The ALJ concluded that "[t]he evidence does not establish the presence of a shoulder or nerve impairment that has lasted or is expected to last at

least 12 months." Tr. 28. Accordingly, substantial evidence supports the ALJ's findings regarding Moran's left shoulder.

Moran primarily argues that because the record contains evidence that her left shoulder impairment lasted for twelve months, she has satisfied the duration requirement. ECF No. 15 at 22 (citing Tr. 1050). The Commissioner contends that Moran "has not shown that her alleged left shoulder problems significantly limited the use of the left extremity for 12 months such that it had to be included in the RFC." ECF No. 19 at 9. The Court agrees.

In reply, Moran merely restates the timeline of evidence relating to her left shoulder and asserts that this proves that her shoulder rendered her unable to engage in substantial gainful employment. ECF No. 20 at 2. She also argues that the ALJ erred by not discussing certain x-rays of her shoulder because an ALJ must "explain his reasons for rejecting evidence in favor of the claimant." *Id.* at 3 (internal quotation marks omitted) (quoting *Rangel v. Astrue*, No. CIV.A H-07-1959, 2008 WL 8053471, at *6 (S.D. Tex. June 27, 2008)). But the Fifth Circuit has found a "rigid approach" to be unnecessary. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) ("[F]or example, . . . when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain.") (citing *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir.1988)). Instead, the ALJ must, at a step in which he makes an unfavorable finding, "discuss the evidence in favor of [the claimant]'s claim for disability and explain why []he found [the claimant] to not be disabled at that step." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (discussing 42 U.S.C. § 405(b)(1)) (finding that the ALJ erred where she "offered nothing to support her conclusion," leaving the reviewing court unable to determine whether her decision was based on substantial evidence). Here, the ALJ discussed the evidence sufficiently to show that he

based his determination on substantial evidence, satisfying the Fifth Circuit's standards. Accordingly, reversal is inappropriate on this ground.

### C. The ALJ properly considered Moran's subjective testimony.

Under SSR 96-7p, an ALJ assessing reports of symptoms must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam). In the first (objective) step, the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, the ALJ proceeds to the second (subjective) step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's self-reported symptoms. *Id.*

The ALJ need not "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected," but must "explain his reasons for rejecting a claimant's complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Here, Moran only disputes the ALJ's evaluation of her statements regarding her mental health limitations. ECF No. 15 at 23-25. Pursuant to SSR 96-7p and 20 C.F.R. § 416.929(c)(3), an ALJ employs a seven-factor analysis to assess the claimant's credibility regarding subjective symptom allegations:

> (1) plaintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.929(c)(3)).

Although the ALJ must explain his reasons, "neither the regulation nor interpretive case law requires that the ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Id.* at 871 (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

The ALJ's evaluation of Moran's subjective complaints was sufficiently specific to make clear that he considered the regulatory factors. The ALJ identified the germane legal standards, stated the parameters of his objective-subjective, two-step analysis, and proceeded in compliance with those legal standards. Tr. 25-27. At step one, the ALJ considered the evidence and concluded that Moran's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 26. However, the ALJ found Moran's statements concerning the intensity, persistence, and limiting effects of symptoms inconsistent with medical evidence in the record. *Id.*

The ALJ did not reject Moran's testimony outright when reaching his decision. *Id.* In fact, the ALJ specifically discussed Moran's "reported symptoms commonly associated with her diagnosis[, including] . . . chronic nervousness, agitation, restlessness, sadness, [] fear[,]" severe anxiety when she leaves her home, "distraction, decreased memory, lethargy, extreme fatigue, insomnia, [] night terrors[,]" and occasional exhibitions of a "tearful, anxious, or depressed mood and affect. Tr. 27 (citing Tr. 377, 381, 612, 669-70, 700-703, 744).

The ALJ robustly explained his conclusion regarding Moran's mental limitations, citing medical evidence from treating physicians and others, and discussing how that evidence factored into his analysis of Moran's symptoms. Tr. 27 (citing Tr. 579, 591, 670, 711, 729-30, 738, 750, 1032, 1068-69). He noted that (1) her cognition, memory, concentration, and judgment are all intact; (2) "[s]he has average to above-average intelligence"; (3) she thinks logically and is goal-oriented; and (4) "[s]he interacts appropriately, maintains eye contact, and expresses herself well in medical and mental-health encounters." *Id.* He also discussed Moran's mental ability "to care for a special needs daughter and manage her activities of daily living" and observed that her agoraphobia "does not prevent her from leaving the house to attend routine doctor visits or go to the emergency room when she feels the need." *Id.* (citing Tr. 296-307, 566, 712, 773, 945-49, 1009, 1042, 1051).

Considering the ALJ's explanation, substantial evidence supports the ALJ's RFC determination and his finding that Moran's mental limitations are not incapacitating. Tr. 27. While Moran argues that there was other medical evidence in the record that contradicted this evidence, this argument is unpersuasive. ECF No. 15 at 23-25. Moran's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted*, No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). Moran has not done so. Therefore, the Court should not reverse on this basis.

### D.     The ALJ properly rejected Dr. Richards's opinion.

Finally, Moran objects to the ALJ's rejection of Dr. Richards's opinion. ECF No. 15 at 25-28. An ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *Qualls v. Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (quoting *Bradley v. Bowen*, 809 F.2d 1054,

1057 (5th Cir. 1987)); *see also Harris*, 209 F.3d at 417. An ALJ may even completely disregard the opinion of a treating physician. *See Brown*, 192 F.3d at 500.

Regardless of whether an ALJ accepts or rejects a medical opinion, he must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b); *see also Guy v. Comm'r of Soc. Sec.*, No. 4:20-cv-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022). The articulation requirement is to "allow a subsequent reviewer or reviewing court to trace the path of an [ALJ]'s reasoning." 82 Fed. Reg. 5858 (Jan. 18, 2017). This requirement is obligatory for claims filed on or after March 27, 2017. *Id.* Moran applied for SSI on March 30, 2021, and is, therefore, entitled to the explanation. Tr. 20, 198.

While ALJs need not exhaustively recount their reasoning, they must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2). Mere evidentiary summaries fall short of § 404.1520c's requirements, as evidenced in the plain meaning of the regulatory text. *Id.* ALJs consider five factors when evaluating medical opinions, and they must explain how they considered the two "most important factors": supportability and consistency. *Id.*

Determining supportability and consistency "involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Linda M. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-CV-210-BK, 2022 WL 4125095, at *3 (N.D. Tex. Sept. 8, 2022) (quoting *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence he provides to support that opinion, "consistency" is

"an all-encompassing inquiry" that focuses on "how well a medical source is supported, or not supported, by the entire record." *Id.* (emphasis removed); *See* 20 C.F.R. §§ 404.1520c(c)(1), (2).

The ALJ evaluated Dr. Richards's opinion at step four. Tr. 29-30. In his decision, the ALJ explained why he found Dr. Richards's testimony to be unpersuasive:

> [Dr. Richards's] opinions are not persuasive. The physical limitations that Dr. [Richards] attributed to medication side effects are not supported by his own records. Those records reflect that the claimant repeatedly told him that she took her medications as prescribed and had no adverse side effects ([Tr. 703, 720, 728, 737, 1034]). The assessed physical limitations also are quite extreme, and are inconsistent with the claimant's conservative treatment and with the physical findings recorded by her medical providers. In examinations since March 2021, doctors have found musculoskeletal tenderness or an antalgic gait on a few occasions, but typically, the claimant has walked with a normal gait and has demonstrated good strength, sensation, and reflexes ([Tr. 659, 664, 670, 712, 1042, 1044-45, 1059, 1110]). The claimant's treatment since 2021 has consisted of medication and physical therapy referrals ([Tr. 670, 715, 1060]). The most recent invasive treatment described in the claimant's treatment notes is a history of epidural steroid injections over a decade ago in 2010 ([Tr. 649, 1054]).
>
> The marked and moderate mental limitations Dr. Richards assessed also are not supported by his records. He recorded objective findings of depressed or anxious mood, but good cognition. He found that the claimant's concentration, memory, fund of knowledge, abstract reasoning, insight, and judgment were intact. He found that her thought processes were logical and her thought content was appropriate ([Tr. 704-705, 722, 738, 1032, 1068-69]). Those findings accorded with the claimant's psychological presentation in medical checkups ([Tr. 712, 1044-45, 1051, 1110]), and in mental-health encounters with other providers ([Tr. 380-81, 571-73, 586, 594-96]). Furthermore, there is inherent inconsistency in Dr. Richards's opinion that the claimant is markedly limited in nearly all mental functions and is moderately limited in her ability to understand and carry out even one-step or two-step instructions, but she can nevertheless manage her own benefits.

Tr. 29-30. Moran only disputes the ALJ's supportability explanation. ECF No. 15 at 28.

Moran argues that "the ALJ failed to properly review Dr. Richards's treatment records." ECF No. 15 at 29. Specifically, Moran disputes the ALJ's finding that Moran consistently reported

experiencing no side effects from her medications because the record contains evidence that she endorsed feeling dizzy and disoriented most mornings after taking Xanax at bedtime. *Id.* at 28 (citing Tr. 796). She also contends that the ALJ failed to provide a rationale for rejecting Dr. Richards's finding that Moran would be absent more than four times a month because of her mental impairments or treatment. *Id.* (citing Tr. 696). Next, Moran argues that the ALJ did not provide valid reasons for discounting Dr. Richards's medical opinion that she had marked and moderate mental limitations in light of her reported hallucinations, chronically high PHQ-9, and ongoing increases in psychiatric medication prescriptions. *Id.* (citing Tr. 738, 1064, 706, 723-24, 731, 739, 1064-65). In reply, Moran elaborates that "[t]here is no indication that the ALJ considered evidence of [her] hallucinations, chronically high PHQ-9 scores, and increases in medications" and that "these omissions frustrate this Court's review." ECF No. 20 at 5.

However, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it[.]" *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). Moran asks the Court to overstep its reviewing role here and substitute its judgment for the ALJ's, which the Court may not do. *Harris*, 209 F.3d at 417. The argument that the evidence the ALJ "ignored" contradicts the ALJ's finding is essentially a request that the Court reweigh the evidence and assign more weight or a different meaning to individual medical reports, diagnoses, or other pieces of evidence than the ALJ did. This is not a proper challenge to the ALJ's RFC. Rather, it is an argument that the ALJ did not give enough weight to those parts of the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Indeed, the Court must limit its inquiry to whether the ALJ sufficiently articulated his finding that Dr. Richards's opinion was unpersuasive such that the Court may find substantial

evidence that supports the Commissioner's decision. Here, the ALJ articulated his reasons for rejecting Dr. Richards's opinion sufficiently to permit judicial review, considering both the supportability and consistency of the opinion in light of other evidence in the record. Accordingly, the ALJ in his broad discretion properly rejected Dr. Richards's opinion. Because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court will not second guess the ALJ's determination of the weight to be afforded Dr. Richards's opinion compared to the rest of the evidentiary record. *See Brown*, 192 F.3d at 496. Considering the clarity of the ALJ's explanation and the degree to which he supported his conclusion with references to specific evidence in the record, substantial evidence supports the Commissioner's conclusion, and reversal is not required.

## IV. CONCLUSION

Because the ALJ employed proper legal standards and substantial evidence in the record supports the ALJ's conclusions regarding the RFC, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on April 24, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE